***********
The Full Commission has reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner DeLuca. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner DeLuca with minor modifications.
 *********** RULING ON MOTION
Following the hearing, Plaintiff moved to include and introduce a medical note from Dr. Thomas Buchheit dated February 23, 2007, identified as Plaintiff's Exhibit 1. Defendants did *Page 2 
not object to Plaintiff's motion. The Industrial Commission therefore grants Plaintiff's motion and has included Plaintiff's Exhibit 1 into the record evidence in this case.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement as:
 STIPULATIONS
1. The date of the alleged injury in this claim is December 14, 2005.
2. On the alleged date of injury, Plaintiff was moving switchgear weighing approximately 1,300 pounds while working at Employer-Defendant. Although the parties do not dispute that this event happened, the parties do dispute whether this event gave rise to a compensable injury.
3. At all relevant times, the parties to this claim were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an Employer-Employee relationship existed between Plaintiff and Employer-Defendant.
5. At all relevant times, Employer-Defendant regularly employed three or more employees in the state of North Carolina.
6. At all relevant times, the carrier of workers' compensation insurance in North Carolina for Employer-Defendant was Carrier-Defendant.
7. Plaintiff's pre-injury average weekly wage is $971.47, and two-thirds of this average weekly wage is $647.67.
8. The Pretrial Agreement, medical records, Industrial Commission forms and Discovery Responses were entered into the record as stipulated exhibits. *Page 3 
 I*********** ISSUES
1. Plaintiff's issues before the Commission are:
 a. Whether Plaintiff had a compensable injury on or about December 14, 2005?
 b. Whether Defendants are liable for Plaintiff's injury?
 c. Whether and to what extent Plaintiff is or will be disabled from his injury, and the amount of indemnity compensation that Defendants must pay for this disability?
 d. Whether Defendants must provide medical compensation for Plaintiff's injury?
2. Defendants' issues before the Commission are:
 a. Whether Plaintiff had a compensable injury on or about December 14, 2005?
 b. To what amount of compensation is Plaintiff entitled, if any?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, Plaintiff was 43 years old, having been born on July 5, 1963. Plaintiff attended a community college where he studied welding for several years after completing high school. In the past, Plaintiff has worked as an electrician, an engineer and a switchman for the railroads, and as a licensed X-ray welder for power plants. Plaintiff has a history of back problems dating back approximately 20 years. *Page 4 
2. For the 12 years prior to the hearing before the Deputy Commissioner, Plaintiff worked at Employer-Defendant as an electrician. Employer-Defendant is a commercial electrical contractor.
3. For the first 11 of these 12 years, Plaintiff worked as a field supervisor, where he supervised up to 30 electricians and helpers at commercial job sites. The field supervisor job involved heavy, manual labor that included placing switchgears, mounting electrical panels, and unloading trucks when electrical equipment and materials for the jobs were delivered.
4. The switchgears that Plaintiff and his work crews used varied in size from being a hundred pounds or less to five sections or more, each weighing approximately 1,300 pounds.
5. The electrical equipment and materials that Plaintiff had to unload included, but was not limited, to light fixtures, switchgears, and electrical panels. Plaintiff and his crew would sometimes use a ramp, a forklift when available, or pipes to roll some of the heavier equipment.
6. Plaintiff has had back problems related to his employment with Employer-Defendant at least since 1998, after falling off a ladder at work. He went to his family doctor and a chiropractor for several years before getting an MRI in August 2000. Thereafter, Plaintiff saw Dr. Tim Garner, a neurosurgeon, who treated him conservatively for approximately one year before recommending surgery.
7. On September 14, 2001, Dr. Garner performed a bilateral microdiskectomy and lumbar laminectomy at L5-S1 on Plaintiff. Plaintiff missed approximately six weeks after this surgery before returning to work with Employer-Defendant. Plaintiff used his group health coverage for the medical expenses from this surgery and did not file a workers' compensation claim. Employer-Defendant continued to pay Plaintiff's salary during his recovery from this surgery. *Page 5 
8. On April 14, 2004, Plaintiff returned to Dr. Garner after going approximately two-and-one-half years without medical treatment while working as a field supervisor with Employer-Defendant. Dr. Garner associated an orthopedic surgeon, Dr. Leonard Nelson on Plaintiff's care. On November 11, 2004, Dr. Nelson recommended additional surgery for Plaintiff's back.
9. On November 16, 2004, Dr. Nelson and Dr. Garner performed a 360-degree posterior lumbar fusion on Plaintiff's back at the levels of L4-5 and L5-S1. Following the surgery, Plaintiff had a normal physical and neurological examination with no muscle spasms, a negative straight leg raise test, normal reflexes, normal sensation with no numbness, normal strength with no weakness, and a normal range of motion.
10. After the surgery on November 16, 2004, Plaintiff missed approximately one-and-one-half months from work. He returned to work with Employer-Defendant on January 3, 2005. Plaintiff had an excellent result from surgery and had returned to work quicker than expected. Once again, Employer-Defendant continued his salary during his absence from work and Plaintiff filed all of his medical expenses on his group health insurance coverage. Plaintiff did not file for workers' compensation benefits at this time.
11. When he returned to work on January 3, 2005, Plaintiff did not return to the field supervisor job. Rather, he returned to an office job as a safety officer, purchasing agent, and project manager. This job was lighter and less demanding physically than the field supervisor job.
12. Dr. Garner did not treat Plaintiff after the surgery on November 16, 2004, and has not treated him since that time. *Page 6 
13. Dr. Nelson released Plaintiff on May 9, 2005. At that time Plaintiff was working on a full-time basis with Employer-Defendant in the office job, and Plaintiff had a normal physical and neurological examination. Plaintiff was going to the gym three times a week, where he walked on a treadmill for a mile or a mile-and-a-half during each workout, and he was on a home exercise regime. He walked without a limp or assistive device. Plaintiff had a better than average recovery from a medical standpoint after the surgery in November 2004, and his back condition was stable.
14. Plaintiff continued to see Dr. Buchheit periodically for ongoing prescription medication between May 9, 2005, and December 14, 2005. During this period, Plaintiff was prescribed approximately three-to-four Percocets per day at relatively low strengths. Plaintiff consistently rated his pain on an average of four or five out of ten during this time on a subjective scale, which was not unusual given Plaintiff's work activities and medical history.
15. Plaintiff was involved in a motorcycle accident on Saturday, June 4, 2005. However, Plaintiff did not injure or re-injure his back in this accident, nor did the accident aggravate his pre-existing back condition. Plaintiff returned to work with Employer-Defendant on Monday, June 6, 2005.
16. In late July or early August 2005, Employer-Defendant transferred Plaintiff out of his office job and back out into the field as an electrical field supervisor. This was the same job that Plaintiff had previously performed with Employer-Defendant, and it still involved heavy, manual labor. Plaintiff continued to work as a field supervisor through December 14, 2005.
17. On December 14, 2005, Plaintiff was moving switchgear with a team of workers and re-injured his back. He felt pain when moving the switchgear. The switchgear consisted of five pieces that each weighed approximately 1,300 pounds. Plaintiff testified that initially he *Page 7 
was supervising the move, but the workers were struggling and he started to assist by pushing on the pieces because they would not line up properly. Plaintiff was pushing up on the switchgear, wedging up on it with a wedge and lifting, twisting and turning it with a bar trying to get the pieces to line up. It took a period of 6 hours and Plaintiff was grabbing, pushing and pulling the whole time. Plaintiff experienced immediate lower back and leg pain after the incident which got progressively worse.
18. Employer-Defendant knew about Plaintiff's back problems before December 14, 2005. Employer-Defendant's owner, Mr. Patterson previously instructed Plaintiff not to do anything that would hurt his back. Mr. Patterson was not present on December 14, 2005, when Plaintiff engaged in work that caused injury to his back. Defendants stipulated that Plaintiff was moving switchgear weighing approximately 1,300 pounds while working for Employer-Defendant on December 14, 2005 and that Plaintiff reported the incident to Employer-Defendant "the following day." Plaintiff reported that he had done something to his back moving switchgear, putting it in place. Plaintiff's injury on December 14, 2005 arose out of and in the course of his employment and was a direct result of a specific traumatic incident of the work assigned by Employer-Defendant.
19. On December 15, 2005, Plaintiff saw Dr. Buchheit's nurse practitioner, Ms. Kim Graham. Plaintiff told Ms. Graham that he had re-injured his back doing field work. Ms. Graham reported that Plaintiff had changed jobs from an office job back out to the field and that working in the field had caused an increase in Plaintiff's back pain. However, Ms. Graham did not recall whether she knew what "field work" involved, or whether Plaintiff's job as an electrical field supervisor involved heavy lifting of switchgears. She did know that "field work" had caused a significant aggravation of Plaintiff's back pain. *Page 8 
20. Both Dr. Buchheit and Ms. Graham testified that they did not ordinarily repeat the history of Plaintiff lifting switchgear or doing field work in subsequent medical records because doing so would not serve any purpose related to medical treatment. However, both Dr. Buchheit and Ms. Graham testified that they had specific knowledge independent of their medical records that Plaintiff had always told them about the switchgear incident on December 14, 2005 at his medical appointments and that this incident was the source of his worsened condition.
21. Since the switchgear incident on December 14, 2005, Plaintiff has had increased back pain that has radiated to his legs and hips.
22. After December 14, 2005, Plaintiff continued to try to work full time. He was transferred back to the office job because he had difficulty doing the electrical field supervisor job. Plaintiff also began to have difficulty maintaining consistent work attendance.
23. Plaintiff filed for workers' compensation after the switchgear incident because of the prospect of not being able to return to work as an electrician for Employer-Defendant following the anticipated fusion of additional levels of his spine.
24. Dr. Buchheit removed Plaintiff from all work on February 23, 2007 in anticipation of surgery in March 2007 to fuse the levels of L2-3 and L3-4.
25. Between May 9, 2005, and December 14, 2005, Plaintiff had some back pain, but it had been stable and at a consistent level. Following the switchgear incident on December 14, 2005, Plaintiff had a sudden increase in pain that remained significantly and consistently higher than pain levels experienced in the several months before this incident.
26. Plaintiff did not have significant numbness, if any, in his legs between Dr. Nelson's release on May 9, 2005, and the switchgear incident on December 14, 2005. After the *Page 9 
switchgear incident, Plaintiff has had numbness in his legs on an ongoing basis, and he has to sit awkwardly to take pressure off of his back.
27. Since the switchgear incident on December 14, 2005, Plaintiff has needed new pain medications and stronger dosages of medications than those he had taken before the incident. These medications include Percocet, Neurontin, Avinza, Cymbalta, and others. His prior medications have become less effective for Plaintiff after the switchgear incident, and Plaintiff feels tired most of the time because of the side effects from his medications. Plaintiff has also had insomnia from his back pain that has increased since the switchgear incident. He does not sleep more than a couple of hours a night on an uninterrupted basis.
28. Plaintiff's doctors recommended epidural steroid injections on the visit right after the switchgear incident. Plaintiff had not needed these injections since before his surgery in November 2004.
29. On physical examination, Plaintiff's range of motion decreased significantly following the switchgear incident. He now walked with an antalgic gait and could not stand up straight without aggravating his back and leg pain. Plaintiff has a kyphotic, or hunchback, posture from muscle spasms. He can no longer go to the gym or participate in a home exercise regime because of these problems.
30. Plaintiff had x-rays taken before and after the switchgear incident. Before the switchgear incident, Plaintiff did not have a listhesis at L3-4 on x-rays taken in June 2005. By comparison, Plaintiff did have a listhesis at these levels according to x-rays taken after the switchgear incident. A listhesis occurs when a vertebra slips or moves.
31. Dr. Buchheit performed discograms on Plaintiff both before and after the switchgear incident, and a comparison showed a change in Plaintiff's underlying condition. *Page 10 
Before December 14, 2005, a discogram had shown abnormal and symptomatic pathology at L5-S1 and, to a lesser extent, L4-5. In contrast, the discogram performed after the switchgear incident indicated additional abnormal and symptomatic pathology at the levels of L2-3 and L3-4. This new pathology is called adjacent segment disease.
32. The switchgear incident on December 14, 2005, aggravated Plaintiff's pre-existing back condition and caused a significant worsening of this condition both objectively and subjectively. The effects of the switchgear incident include Plaintiff's pain that increased suddenly thereafter, his need for different and stronger pain medications than those taken prior to the switchgear incident, increased numbness in his legs, new and abnormal findings on physical or neurological examinations, decreased range of motion and problems walking, increased insomnia, and increased physical limitations.
33. Plaintiff's lumbar fusion in November 2004 placed him at an increased risk of developing the listhesis at L3-4 and adjacent segment disease. However, this was not the sole contributing factor to Plaintiff's development of increased pain and impairment after the switchgear incident on December 14, 2005.
34. Although Plaintiff's listhesis likely existed before the switchgear incident, the switchgear incident aggravated it, along with Plaintiff's adjacent segment disease, to such an extent that these diagnoses became significantly more symptomatic at that point and continuing thereafter. As indicated by the medical doctors who have participated in Plaintiff's care both before and after the switchgear incident, the most probable and aggravating cause of Plaintiff's increased symptoms from this change in pathology is the switchgear incident on December 14, 2005. *Page 11 
35. As the result of the switchgear incident on December 14, 2005, Plaintiff needs to have additional levels fused in his lumbar spine that are adjacent to the levels previously fused. He has also needed reasonable and necessary medical treatment, which has been and continues to be provided and recommended by Dr. Buchheit and Dr. Nelson.
36. Plaintiff is not yet at maximum medical improvement.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission has proper jurisdiction over the parties and the subject matter of this litigation. N.C. Gen. Stat. § 97-91.
2. Plaintiff sustained a compensable injury by a specific traumatic incident arising out of and in the course of his employment with Employer-Defendant on December 14, 2005. See N.C. Gen. Stat. § 97-2(6). This injury consists of an aggravation of Plaintiff's pre-existing back condition as well as additional pathology leading to the worsening of Plaintiff's pain and functional limitations. See Hoyle v. CarolinaAssoc. Mills, 122 N.C. App. 462, 466, 470 S.E.2d 357, 359 (1996).
3. As the result of the specific traumatic incident on December 14, 2005, Plaintiff has required reasonable and necessary medical treatment that is designed to effect a cure, provide relief, or lessen the period of his disability. See N.C. Gen. Stat. § 97-2(19). Defendants are liable for the medical treatment, recommendations, and referrals by Dr. Buchheit and Dr. Nelson, who are designated as Plaintiff's authorized treating physicians, and this treatment includes the additional surgery recommended by the doctors. Plaintiff is not yet at maximum medical improvement. *Page 12 
4. For the several days following the discogram that he had on November 28, 2006, Plaintiff was totally disabled. Defendants shall provide Plaintiff's counsel with Plaintiff's work attendance record during November and December 2006 so that the duration of this disability can be determined by the parties. See N.C. Gen. Stat. §§97-2(9), 97-29.
5. From February 23, 2007, through the present time and continuing, Plaintiff has been totally disabled. N.C. Gen. Stat. §§ 97-2(9), 97-29.
6. Plaintiff's motorcycle accident on June 4, 2005, was not a causal or contributing factor to his compensable back condition or the disability resulting from it.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission makes the following:
 AWARD
1. Defendants shall authorize and pay for all medical compensation recommended and provided by Dr. Buchheit and Dr. Nelson to Plaintiff after December 14, 2005, that is, or was reasonably required as a result of Plaintiff's compensable injury of December 14, 2005.
2. Subject to the attorneys' fee in paragraph 3 below, Defendants shall pay total disability compensation to Plaintiff at the stipulated compensation rate of $647.67 per week from February 23, 2007, through the present time and continuing until further order of the Commission. Defendants shall also pay disability compensation, if any, owed during the several days following November 28, 2006, when Plaintiff was totally disabled after his discogram, also subject to the attorneys' fee awarded below. All accrued amounts shall be paid in a lump sum.
3. Plaintiff's counsel is entitled to a reasonable attorneys' fee of 25% of the compensation awarded to Plaintiff in this Opinion and Award. Defendants shall pay these fees *Page 13 
directly to Plaintiff's counsel as follows: 25% of any accrued amounts paid to Plaintiff's counsel in a lump sum and thereafter 25% of any future amounts due Plaintiff shall be deducted and Plaintiff's counsel shall receive every 4th check.
4. Defendants shall pay the costs, including expert witness fees in the amount of $500.00 to Dr. Buchheit, $225.00 to Ms. Graham and $525.00 to Dr. Garner, if not already paid.
This the ___ day of January 2008.
S/______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/______________________ DANNY LEE McDONALD COMMISSIONER
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER
 *Page 1